# Interpretation of Inspector General Act

Although it is a close question, the better interpretation of the Inspector General Act is that Congress did not intend to limit the phrase "recommendation that funds be put to better use" to only those audit recommendations that achieve identifiable monetary savings.

March 20, 1998

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL FOR ADMINISTRATION
AND THE
INSPECTOR GENERAL

You have asked us to resolve a dispute regarding the appropriate interpretation of the phrase "recommendation that funds be put to better use," as used in the Inspector General Act, 5 U.S.C. app. §§ 1–12 (1994) ("IG Act"). It is our understanding that the Justice Management Division ("JMD") and the Office of the Inspector General ("OIG") disagree as to which recommendations may properly be identified and reported by OIG as "funds put to better use." *See* Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Stephen R. Colgate, Assistant Attorney General for Administration, and Michael R. Bromwich, Inspector General, *Re: Audit Resolution Committee Request for Legal Opinion* (July 11, 1997). JMD asserts that " 'funds put to better use' may only be claimed when some type of savings results from the audit recommendation." *Id.* at 1. OIG, on the other hand, believes that the phrase also encompasses "recommendations that funds be redirected to achieve greater efficiency, accountability, or internal control objectives even though not necessarily monetized as savings." *Id.*

As we explain more fully below, we conclude that, although it is a close question, the better reading of the statute is that Congress did not intend to limit the phrase "recommendation that funds be put to better use" to only those audit recommendations that achieve identifiable monetary savings.

## DISCUSSION

Section 5 of the IG Act requires each Inspector General to prepare semiannual reports "summarizing the activities of the Office" during the immediately preceding six-month period. 5 U.S.C. app. § 5(a). The statute specifies certain information that must, at a minimum, be contained in such reports. *Id.* Included among these requirements is:

> a listing, subdivided according to subject matter, of each audit report issued by the Office during the reporting period and for each audit report, where applicable, the total dollar value of questioned

50

costs (including a separate category for the dollar value of unsup-
ported costs) and the dollar value of recommendations that funds
be put to better use.

*Id.* § 5(a)(6). The statute further requires separate statistical tables summarizing,
with respect to audit reports pending and issued during the reporting period,
decisions made by management as a result of those reports: one table concerns
the status of management decisions in response to questioned costs, and the other
concerns the status of management decisions in response to recommendations that
funds be put to better use. *Id.* § 5(a)(8), (9).

The phrase "recommendation that funds be put to better use" is defined in
the IG Act as follows:

a recommendation by the Office that funds could be used more
efficiently if management of an establishment took actions to imple-
ment and complete the recommendation, including—

(A) reductions in outlays;
(B) deobligation of funds from programs or operations;
(C) withdrawal of interest subsidy costs on loans or loan
guarantees, insurance, or bonds;
(D) costs not incurred by implementing recommended
improvements related to the operations of the establishment,
a contractor or grantee;
(E) avoidance of unnecessary expenditures noted in
preaward reviews of contract or grant agreements; or
(F) any other savings which are specifically identified.

*Id.* § 5(f)(4). Looking first only to that portion of the definition that precedes items
(A) through (F), the critical interpretive question is whether "a recommendation
. . . that funds could be used more efficiently" is limited to a recommendation
that funds could be saved. An affirmative answer to this question requires equating
efficiency with identifiable savings.[1] However, the dictionary defines "efficiency"
as the "capacity to produce desired results with a minimum expenditure of energy,
time, money, or materials." Webster's Third New International Dictionary 725
(1986). Pursuant to this definition, efficiency could include, but need not nec-
essarily be limited to, monetary savings. Efficiency could be achieved, for
example, by accomplishing a particular task in a shorter amount of time, thereby
freeing up personnel resources to turn to another task. Although ultimately an
agency may save money by saving energy, time, or materials, such savings may
be neither identifiable nor quantifiable. We therefore conclude that, standing alone,

---

[1] We use the term "savings" as we understand JMD uses that term, i.e an identifiable reduction in costs *See*
Webster's Third New International Dictionary 2020 (1986)

the definition of "recommendation that funds be put to better use" that precedes subsections (A) through (F) would best be interpreted as not requiring a demonstration of identifiable savings.

JMD further contends, however, that each of the examples that follows in subsections 5(f)(4)(A) through (F) refers to some type of savings, and therefore that the definition of "recommendation that funds be put to better use" also must be interpreted as limited to specifically identified savings. Under the long-established canon of *ejusdem generis*, where a general term follows a specific one, the general term should be construed to encompass only subjects similar in nature to those subjects enumerated by the specific words. 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.17 (5th ed. 1992). The doctrine is equally applicable where specific words follow general ones: application of the general term is then restricted to matters similar to those enumerated. *Id.* We note, however, that the rule is, like other canons of statutory construction, "only an aid to the ascertainment of the true meaning of the statute. It is neither final nor exclusive." *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 89 (1934). The canon should not govern "when the whole context [of a statute] dictates a different conclusion." *Norfolk and Western Ry. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991).

There are two separate *ejusdem generis* arguments to be made with respect to subsection 5(f)(4). The first relies upon the catchall reference in subsection 5(f)(4)(F) to "any other savings" to reinforce a conclusion from the text of subsections 5(f)(4)(A) through (E) that the categories itemized therein all enumerate various examples of savings. OIG, however, disputes that all of the examples listed in subsections (A) through (E) constitute savings. OIG concedes that (A) ("reductions in outlays") and (B) ("deobligation of funds") comprise savings, but questions whether (C) ("withdrawal of interest subsidy costs") would also fall into this category, especially if the interest subsidy is recaptured and reallocated elsewhere. *See* E-Mail for Beth Nolan, Deputy Assistant Attorney General, Office of Legal Counsel, and Janis Sposato, Deputy Assistant Attorney General, Justice Management Division, from Robert L. Ashbaugh, Deputy Inspector General, Office of Inspector General (Dec. 19, 1997). Similarly, OIG asserts that subsections (D) ("costs not incurred by implementing recommended improvements") and (E) ("avoidance of unnecessary expenditures") need not necessarily result in savings, if the funds recovered are reinvested in the program. *Id.* We believe, however, that the better reading of (C), (D), and (E) is that they *do* define different categories of savings. The language used in these subsections suggests funds recovered—e.g., "withdrawal of . . . costs," "costs not incurred," "avoidance of unnecessary expenditures"—and thus provides strong textual support for application of *ejusdem generis* in this context.

Under the second *ejusdem generis* argument, the general definition of "recommendation that funds be put to better use" that precedes subsections 5(f)(4)(A)

through (F) is limited by the items listed in those subsections, i.e. the definition is limited to identifiable savings. We believe this second argument, while not without merit, is less tenable in light of both the textual definition of "recommendation that funds be put to better use" and the legislative history of the IG Act.

Under the statute, a "recommendation that funds be put to better use" is a "recommendation . . . that funds could be used more efficiently if management of an establishment took actions to implement and complete the recommendation, including" the list of examples of savings in subsections (A) through (F). 5 U.S.C. app. § 5(f)(4). An interpretational difficulty is presented by the fact that the word "including" could be read to modify either the phrase "recommendation . . . that funds could be used more efficiently" or the phrase "actions to implement and complete the recommendation." If the list of examples of savings is read to modify the former, then the argument that "recommendation that funds be put to better use" is limited to savings is more forceful, for the various categories of savings would exemplify the kinds of final recommendations that management might make. However, if the list of savings instead modifies the noun "actions," then the categories of itemized savings offer examples of the kinds of actions management might take to "implement" a particular recommendation for greater efficiency. Under the second reading, achieving savings would be part of the *implementation* of the recommendation; the decision whether to reinvest those savings in the program from which they derived or to set them aside for some other purpose would *complete* the recommendation. Thus, a recommendation that funds be put to better use could require management to take steps to achieve savings and then reallocate those savings to the same program or others in order to realize a more efficient use of the funds, in terms of energy, time, or materials. The end result need not necessarily produce identifiable savings, even though savings would be achieved during one of the interim steps of the recommendation.

Although it is a close question, we think that the second reading better reconciles the list of examples in subsections 5(f)(4)(A) through (F) with the broader definition of "recommendation that funds be put to better use" preceding that list. In light of our conclusion that the term "efficiently" is not limited to identifiable savings, it is more consistent with this broader understanding to interpret subsections (A) through (F) as illustrative of the kinds of interim actions that might be taken to implement a particular recommendation.

Because it is a close textual question, we look to the legislative history of the 1988 amendments to the IG Act, in which the definition of "recommendation that funds be put to better use" first appeared, to see if we can find evidence of congressional intent. The history is not particularly helpful with respect to the question before us, but it does not contradict our textual interpretation. One of Congress's concerns in enacting the 1988 amendments was that the semi-annual reports of inspectors general varied widely in format and in the terms used to describe the audit resolution process. *See* S. Rep. No. 100–150, at 24 (1987).

Congress wanted to standardize the reporting process in order to develop "an overall picture of the Federal government's progress against waste, fraud and mismanagement." *Id.* At the same time, Congress enacted reforms "to provide for more independence for audit and investigative operations." H.R. Rep. No. 100-771, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3154, 3158 ("House Report"). The House hearings on the 1988 amendments affirmed Congress's "strong commitment to the IG concept and the indisputable preponderance of evidence that IG's have greatly improved operations in their departments and agencies, *in addition* to saving the American taxpayers literally billions of dollars." *Inspector General Act Amendments of 1988: Hearing on H.R. 4054 Before the Subcomm. on Legislation and National Security of the House Comm. on Government Operations*, 100th Cong. 21 (1988) (emphasis added) (statement of Rep. Horton) ("House Hearing").

Originally, neither the Senate bill (S. 908) nor the House bill (H.R. 4054) proposing the 1988 amendments to the IG Act included any reference to "recommendation that funds be put to better use." Rather, the phrase first appeared in H.R. 4054 after committee markup. The precise scope of the definition is not addressed in the legislative history. However, the House report offers some support for a broad reading of that phrase that comports with our interpretation of the text:

> The format speaks of "funds recommended to be put to better use."
> The committee intends that inspectors general report the amounts
> of *funds or resources* that will be used more efficiently as a result
> of actions taken by management or Congress if the inspector general's recommendation is implemented.

House Report at 19, *reprinted in* 1988 U.S.C.C.A.N. at 3172 (emphasis added). The committee's reference not only to "funds" but also to "resources" "that will be used more efficiently" is more consistent with an understanding of "recommendation that funds be put to better use" that includes non-monetized efficiencies.

Moreover, while we recognize that the statements of individual legislators have limited interpretive value, *see Garcia v. United States*, 469 U.S. 70, 76 (1984), we note a floor comment made by Senator Glenn, Chairman of the Senate Governmental Affairs Committee that considered S. 908, who praised the historical success of inspectors general in achieving both identifiable savings and non-quantifiable efficiencies:

> According to the most recent report from the Council that coordinates IG activities, in the past 5 years more than $92 billion have
> been recovered or put to better use because of the IG efforts.

> That comes out to about $18 billion per year. That is B for billion. That is a significant amount of money. *It could be even greater than that, because it is difficult to evaluate and quantify some of these savings where you are making more efficient use of money.*

134 Cong. Rec. 615 (1988) (statement of Sen. Glenn) (emphasis added). Although it is not clear that Senator Glenn, nor for that matter any other member of Congress who spoke about the proposed legislation, was thinking of the distinction between identifiable savings and other efficiencies in the context of "recommendation that funds be put to better use" at the time he made his statement, the comment suggests that Senator Glenn considered that funds "recovered or put to better use" would not necessarily be quantifiable.

## CONCLUSION

Neither the text nor the legislative history of the IG Act offers clear evidence of how broadly Congress intended to define "recommendation that funds be put to better use." Nevertheless, we conclude that, on balance, the better interpretation of that term is that it not be limited to only those audit recommendations that achieve identifiable monetary savings.

DAWN JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*